UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 20-145-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| TRANSYLVANIA UNIVERSITY, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff John Doe has filed a motion for the issuance of a temporary restraining order and/or a temporary injunction. Through the motion, the plaintiff seeks to prevent Defendant Transylvania University from proceeding with a student disciplinary hearing on April 15, 2020. [Record No. 5] He also has filed a motion to expedite discovery in the case. [Record No. 6] A hearing was held concerning the plaintiff's motions on April 9, 2020.

Because all four factors weigh against preliminary injunctive relief, the plaintiff's motion for the issuance of a temporary restraining order or a temporary injunction will be denied. Additionally, the Court declines to expedite discovery for the reasons explained in this opinion.

## I.

Both John Doe and Jane Doe are students at Transylvania, a private university located in Lexington, Kentucky. The story begins on the evening of December 7, 2019,

when John and Jane returned to John's dorm room following an off-campus party. [Record No. 14-1] Jane contends that she walked John back to his dorm room because he was intoxicated and needed help. [Record No. 14-1, p. 3] John alleges, however, that after the two arrived at his room, Jane started kissing him without his consent. He claims that he then told her to leave and that she complied. [Record No. 5; Record No. 14-1, p. 7]

Jane's version of the events differs significantly. In relevant part, Jane claims that, after the two arrived at John's room, he initially sat on his couch as she turned to look for her phone. However, when she turned back, she discovered that John had undressed himself. [*Id.*] He then allegedly grabbed her wrists, pulled her onto the couch, forcefully kissed her, bit her, spanked her, and held her down. [*Id.*] Jane also claims that John tried to undress her, but she told him "no" and tried to leave. Although Jane asserts that John refused to release her, she states that she was able to push John away and leave the room. [*Id.*]

Transylvania received an anonymous report from a resident advisor on December 8, 2019, alleging that John Doe engaged in sexual misconduct the prior night. [*Id.* at 4] Jane was contacted on December 9, 2019, about providing an initial statement regarding the alleged misconduct. Thereafter, she met with the University's Title IX Coordinator, Amber Morgan, on December 10, 2019, and filed a formal complaint. [*Id.*] Transylvania commenced an investigation regarding the events occurring December 7, 2019. [*Id.*]

On December 12, 2019, John Doe received notice of the investigation regarding possible violations of the University's Sexual Misconduct Policy. This included the allegations made by Jane Doe. [Record No. 14-2] John met with Amber Morgan that

- 2 -

afternoon to discuss his rights as a respondent and the interim measures the school intended to put into place while the investigation was ongoing.  [Record No. 14-4] John also received an e-mail the following day detailing the initial measures and sanctions pending the investigation. [Record No. 14-5]

Transylvania asserts that the interim sanctions were informed by the fact that John was a respondent in two sexual misconduct investigations involving allegations of non-consensual contact.  John was to instructed have no contact with either of the reporting parties, was placed on an interim suspension from certain campus locations and was placed on interim social probation.  [Record No. 14-5] Additionally, John was prohibited from returning to the University's residence halls.  [*Id*.]  Instead, John moved into the University's 4th Street Apartment Complex but could not visit other residences in the complex or have guests in his apartment.  [*Id*.]  The interim sanctions were later amended to allow three friends to visit his new residence.  [Record No. 14-6]

Following winter break, Title IX investigators interviewed Jane Doe, John Doe, and a handful of other witnesses.  The investigators also reviewed relevant evidence including text messages, videos, and photographs.  [Record No. 14-1] According to the University, John never alleged during his initial interview that Jane's actions were unwanted.  Instead, he described their acts as consensual and noted that he probably gave Jane Doe "hickeys" on her neck during the December 7 encounter.  [Record No. 14-7]

Later, the law firm Bleile & Dawson filed a notice of representation on behalf of John Doe in connection with the administrative proceeding.  Investigators rescheduled a follow-up meeting with John and his attorney for January 28, 2020. [Record No. 14-8]

Additionally, Ms. Morgan provided copies of all communications with John Doe as well as his earlier statements.  [Record No. 14-9] However, John's story changed.  During the follow-up meeting, John alleged for the first time that Jane's alleged actions were unwanted.  [Record No. 14-11, p. 2] Notwithstanding this new assertion, however, John continued to assert that he gave Jane Doe "hickeys".

The Title IX Coordinator also provided John's counsel with the unredacted Investigative Report and a link to a Google Drive folder containing the evidence assembled by the investigators. [Record No. 14-18] Further, counsel was provided with a redacted copy of the Investigative Report for review and use by John Doe.  A pre-hearing conference was scheduled for February 20, 2020.

During the pre-hearing conference, counsel for John Doe contended that John Doe had made a Title IX complaint against Jane Doe in each of his interviews.  However, John had never indicated that he wanted to pursue a complaint or initiate a separate investigation. [Record No. 14-17] Later that evening, John consented to a separate investigation and filed a formal complaint against Jane.  In his complaint, John asserted he was the victim of an unwanted sexual assault by Jane and referenced previous statements that he made to the Title IX Investigators on January 7 and January 28.   [Record No. 14-14] The Title IX office then inquired of counsel whether it should confer with John directly regarding his complaint or whether counsel requested that the school communicate only through him.  In response, counsel approved direct communication with John.

Following the pre-hearing conference, counsel for John made multiple demands to the Title IX Coordinator, including a request for further evidence.  [Record No. 14-12] In

addition to challenging the hearing process, counsel asserted that John was the subject of discriminatory treatment by the school's handling of the matter.  [*Id*.]  The hearing originally scheduled for February 26, 2020, was postponed so the University to address counsel's concerns.  [*Id*.]

New counsel, Kevin Murphy, entered an appearance on John Doe's behalf on February 26, 2020.  [Record No. 14-19] Murphy requested that John be allowed to live off campus.  Morgan responded to this request, noting that he had already applied to live off campus, but failed to include supporting documentation with his application.  Morgan agreed, however, to arrange approval of his request.  [*Id*.]  Morgan contacted Murphy to confirm a new hearing date of March 23, 2020, and to discuss the opportunity for a pre-hearing conference and the possibility of informal resolution of the claim.  [Record No. 14-20]

Morgan also contacted John Doe on February 21, 2020, regarding scheduling a meeting to discuss his formal complaint. [Record No. 14-17] John responded by referring to his previous statements.  Morgan followed-up with John, asking for cooperation and again attempted to schedule a meeting to discuss his complaint.  But neither John nor his attorneys responded to Morgan's request.  Two Title IX investigators, unrelated to the other pending matters, were assigned to investigate John complaint.  [Record No. 14-18, p. 5] Morgan then attempted to contact attorney Murphy to provide the investigative report of John complaint against Jane and discuss concerns raised in previous communications. [Record No. 14-21]

The investigators found that there was insufficient evidence to send John complaint to the hearing board.  [*Id*. at 4] More specifically, they reviewed interview transcripts from all witnesses in determining that a preponderance of the evidence did not to suggest that the hearing board should consider his claim.

A final hearing on Jane Doe's complaint is scheduled to commence on April 15, 2020.  Transylvania's Sexual Misconduct Policy[1] provides for notice to be given of charges made against a respondent, a prehearing conference, and a neutral hearing before a three-member panel.  Panel members are selected from a pool of faculty and staff trained by accredited organizations. During the hearing, the parties may call witnesses, present evidence, make opening and closing statements, and challenge the evidence.  In light of John Doe's objection to the form of cross-examination, Transylvania modified its policy to include proposed Department of Education regulations regarding cross-examination. Further, the University's policy allows an internal appeal of the final decision of the hearing panel to an independent Hearing Appeals officer.

On April 7, 2020, John Doe filed a verified complaint, asserting that the University discriminated against him (Count I) and failed to comply with university policies (Count II) under Title IX.  [Record No. 1] Additionally, in Count III, he asserts a claim of emotional distress under state law.  More specifically, Doe takes issue with the procedures and conduct occurring during the investigation.  John asserts that he filed an informal report to Transylvania, contending that he did not consent to the kissing initiated by Jane.  He

---

[1]Transylvania University Sexual Misconduct Policy, http://www.transy.edu/sites/default/files/pictures/Sexual-MisconductPolicy_1920.pdf (last visited April 10, 2020).

alleges, however, that Transylvania did not conduct an appropriate investigation regarding his version of the events or inform him that he had a right to pursue a Title IX claim. John claims that he submitted a formal complaint in February 2020 after Transylvania failed to take action based on his informal complaint. He then alleges that Transylvania dismissed his formal complaint after a mere two weeks and following no real investigation.

Through his pending motion for injunctive relief, Doe seeks to prevent the student disciplinary hearing from commencing on April 15, 2020. [Record No. 5] Instead, he asks the Court to direct the school to postpone the hearing until the Court determines whether the University violated its own policies and discriminated against him. Moreover, Doe contends that the hearing should be postponed given the current COVID-19 pandemic. Finally, John Doe has requested expedited discovery. [Record No. 6]

A hearing was held regarding the plaintiff's requested relief on April 9, 2020. Through counsel, John argued that John's rights will be further violated if the hearing proceeds because it is scheduled to be held *via* video conference and, therefore, will not be a "live" hearing that is referenced in Transylvania's policy manual. Additionally, he claimed that John Doe's right to cross-examination will be violated if the school utilizes the policies currently in place for such examination. Next, although there is no real support for his position, counsel contends that a fair hearing cannot be conducted because those involved in the administrative proceeding are not properly trained.

John Doe argues that certain due process rights have been (or will be) violated, notwithstanding the fact that he has not raised a claim under § 1983 or identified any violation of a constitutional right he possesses. He believes, however, that due process

applies because the University's policy states that it provides for "a fair and neutral process for all parties," which creates a right to due process under the federal Constitution.  In his reply, Doe asserts that a right to due process arises from the proposed federal regulations.  Conversely, the defendant asserts that no constitutional claim has been properly asserted against it in its capacity as a private university.

Transylvania has also responded to some of the plaintiff's other assertions.  First, it explains that it has modified its policy regarding cross-examination in light of the proposed changes to the Department of Education guidance.  As it explains, there are three avenues for cross-examination Doe will be allowed to utilize during the upcoming hearing: (1) he may submit questions in advance to the hearing panel; (2) during the hearing, Doe may submit additional questions to the hearing panel for inquiry; and (3) questioning can be conducted by Doe's advisor if the advisor is authorized and licensed to practice law in Kentucky.  And while Transylvania attempted to convey this information to Doe and his counsel, that attempt was thwarted by his failure to cooperate in a pre-hearing conference.  Next, the University notes that it has provide all documents and other hearing materials on Google Drive and that it has not received complaints from counsel regarding any problems accessing these documents and materials.

Due to security and privacy concerns of the parties and witnesses, during the April 9 hearing, the Court questioned the University's counsel regarding the platform to be used in conducting the hearing *via* video conferencing.  In response, On April 10, the University filed a supplemental memorandum addressing the Court's concerns.  [Record No. 17] It explains in the supplemental memorandum that the University will utilize a Google Meet

platform which allows for real-time video conferencing.  The defendant further details how it plans to protect the sensitive information and provided the agreement with Google addressing the confidentiality of student records.  [Record No. 17-1] Further, Transylvania provided its virtual hearing protocol.  [Record No. 17-2] This information satisfies the Court's concerns that the hearing not only satisfies University policies but will provide appropriate security and privacy to those involved in the proceeding.

## II.

### A.    *Younger* Abstention

Transylvania asserts that, under the *Younger* abstention doctrine (or some modified version of the doctrine), this Court should hold this matter in abeyance until the student disciplinary hearing has concluded.  *See Younger v. Harris*, 401 U.S. 37, 44 (1971).  The defendant cites to *Doe v. Univ. of Kentucky*, 860 F.3d 365 (6th Cir. 2017), in support of its argument.  In that case, the Sixth Circuit affirmed the decision of this court to abstain from interfering with an ongoing disciplinary proceeding at the University of Kentucky.

In most cases, *Younger* abstention will prevent a federal court from interfering with the functions of state criminal prosecutions.  However, it has been extended in limited circumstances to other state functions.  *See New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989).  After determining if a proceeding qualifies under one of the limited circumstances, the court applies a three-factor test in determining whether to abstain from interfering with a pending proceeding.  *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 432-34 (1982).

In *Doe v. University of Kentucky*, the Sixth Circuit explained that the "*Middlesex* test states that abstention may occur when three criteria are met: (1) state proceedings are currently pending; (2) the proceedings involve an important state interest; and (3) the state proceedings will provide the federal plaintiff with an adequate opportunity to raise his constitutional claims." *Id*. at 369 (citing *Middlesex*, 457 U.S. at 432-34).   It reasoned that the disciplinary action brought against Doe could have severe consequences and the state actor (i.e., the *public* university) initiated the proceeding and the proceeding had enough similarities to qualify as "akin to criminal prosecution." *Id*. at 370.

This case does not meet the factors set forth in *Middlesex*, however.   Transylvania is a private university; thus, there is no state actor or state proceeding.   As a result, the Court declines to apply the *Younger* abstention to delay this litigation while the student disciplinary matter proceeds administratively.   This conclusion, however, will not prevent the Court from utilizing its general authority to stay the case for a limited period if it becomes evident that the plaintiff and/and his attorneys are attempting to use this litigation interfere with or chill the administrative matter from running its course.

### B.    Injunctive Relief

A preliminary injunction has been characterized as "one of the most drastic tools in the arsenal of judicial remedies." *Am. Civ. Liberties Union of Ky. v. McCreary Cty., Ky.,* 354 F.3d 438, 444 (6th Cir. 2003).   Preliminary injunctions are utilized to "preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas, et al. v. Camenisch*, 451 U.S. 390, 395 (1981).   The Court looks at the following four factors in deciding whether to issue a temporary restraining order or preliminary injunction:

(1) whether the movant has a "strong" likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction.

*McPherson v. Michigan High Sch. Athletic Ass'n*, 119 F.3d 453, 459 (6th Cir. 1997) (en banc) (quoting *Sandison v. Michigan High Sch. Athletic Ass'n*, 64 F.3d 1026, 1030 (6th Cir. 1995)); *see also Am. Civil Liberties Union Fund of Michigan v. Livingston Cty.*, 796 F.3d 636, 642 (6th Cir. 2015).  The four factors outlined above are "balanced against one another and should not be considered prerequisites to the grant of a preliminary injunction." *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000).  Additionally, the factors do not need to be given equal weight.  *Suster v. Marshall*, 149 F.3d 523, 528 (6th Cir. 1998).

The plaintiff bears the burden of establishing that a preliminary injunction or a temporary restraining order should issue.  *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).  "A preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits."  *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007).  However, the proof needed is greater than the proof required to survive a summary judgment motion.  *Leary*, 228 F.3d at 739.

### i.   The Court Concludes that John Doe Is Not Likely To Succeed On The Claims He Asserts in His Complaint.

John Doe is not required to fully prove his case to obtain injunctive relief.  However, to establish success on the merits of a claim, the plaintiff must show more than a mere possibility of success.  *Certified Restoration*, 511 F.3d at 543.  "It is ordinarily sufficient

if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as make them fair ground for litigation and thus for more deliberative investigation." *Id*. (citation omitted).

### a.    Discrimination Under Title IX

First, Doe alleges that he was discriminated against in violation of Title IX.  Title IX specifically states that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a).  "Title IX claims . . . arising from disciplinary hearings are analyzed under the erroneous outcome standard, selective enforcement standard, deliberate indifference standard, and archaic assumptions standard."  *Doe v. Case W. Reserve Univ.*, No 1:14CV2044, 2015 U.S. Dist. 123680, at *9-10 (N.D. Ohio Sept. 16, 2015) (citing *Doe v. Univ. of the South*, 687 F. Supp. 2d 744, 756 (E.D. Tenn. 2009)).

Doe contends that he was discriminated against based on his status as a male student and was deprived of educational opportunities and extracurriculars because of the alleged discrimination.  Although Doe's complaint does not allege a specific theory, in light of his reply, it appears that he is asserting claims of erroneous outcome and selective enforcement.

"To plead an erroneous-outcome claim, a plaintiff must allege: (1) facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding and (2) a particularized . . . causal connection between the flawed outcome and gender bias."  *Doe v. Miami Univ.*, 882 F.3d 579 (6th Cir. 2018) (internal citations and

quotations omitted).  "Causation sufficient to state a Title IX discrimination claim can be shown via statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender."  *Doe v.  Cummins*, 662 F. App'x 437, 452 (6th Cir. 2016).

While the disciplinary hearing regarding the claims asserted by Jane Doe has not yet occurred (therefore, there could be no erroneous outcome at this point), John appears to contend that it was erroneous to dismiss his formal complaint while allowing Jane's to proceed.  However, John Doe has not identified any statements or provided any evidence that would demonstrate causation.  More specifically, he has not offered any statements by the disciplinary tribunal or by pertinent university officials to support his contention.  And he has not shown a pattern of decision-making that would show an influence of gender or external pressure demonstrating discrimination.

Simply put, a "[p]laintiff's subjective belief that he was the victim of discrimination — however strongly felt — is insufficient to satisfy his burden at the pleading stage."  *Case W. Reserve Univ.*, 2015 U.S. Dist. LEXIS 123680, at *14.  "Allegations of a procedurally or otherwise flawed proceeding that has led to an adverse and erroneous outcome combined with a conclusory allegation of gender discrimination is not sufficient to survive a motion to dismiss."  *Yusuf v. Vassar College*, 35 F.3d 709, 715 (2d Cir. 1994).  While Doe alleges that: (i) there are multiple flaws within the investigation; (ii) the University's procedures are biased; and (iii) he disagrees with the procedures to be utilized in connection with the upcoming proceeding, he has not alleged or demonstrated any circumstances that show a

causal connection with an erroneous finding.   Thus, Doe has not demonstrated that he would likely succeed on the merits of a Title IX claim for erroneous outcome.

John Doe also may intend to assert a claim for selective enforcement under Title IX. To demonstrate selective enforcement, "a plaintiff essentially asserts that even if he or she did violate a university policy, the decision to initiate disciplinary proceedings or the severity of the penalty imposed was motivated by gender bias." *Marshall v. Ohio Univ.*, Case No. 2:15-cv-775, 2015 U.S. Dist. LEXIS 155291, at *8 (S.D. Ohio Nov. 17, 2015). "To prevail on a 'selective enforcement' claim, the plaintiff must show that a similarly-situated member of the opposite sex was treated more favorably than the plaintiff due to his or her gender." *Cummins*, 662 F. App'x at 452; *see also Mallory v. Ohio Univ.*, 76 F. App'x 634, 641 (6th Cir. 2003) ("To support a claim of selective enforcement, [a male plaintiff] must demonstrate that a female was in circumstances sufficiently similar to his own and was treated more favorably by the University.").

Here, John claims that Jane Doe was informed of her right to file a formal complaint and a long and thorough investigation occurred.  However, when he made essentially the same claim, no one explained the procedures under which he could seek redress.  Instead, after two weeks, his complaint was summarily dismissed without any investigation.  But the facts presented by the parties simply do not support John's assertion.

John Doe was informed of his Title IX rights through multiple meetings with the Title IX Coordinator and via the Sexual Misconduct Handbook that was provided to him. [Record Nos. 14-4, 14-5, 14-17] Additionally, John previously was the subject of another sexual misconduct charge.  Thus, the process was not new.  Moreover, all Transylvania

students are required to annually complete University-sponsored training on sexual misconduct. At a minimum, this training covers the University's policy and procedures for reporting and addressing sexual misconduct. Further, John did not originally assert that the conduct involving Jane Doe was non-consensual. [Record No. 14-7] That did not occur until he involved counsel in the investigation and his story changed. John also failed to cooperate with the investigators after he filed a formal complaint. [Record No. 14-16, 14-17] His claim was dismissed after a different set of investigators found that there was not sufficient evidence to go forward, and this was explained to John in a letter. [Record No. 14-22]

Additionally, John Doe alleges that he was quickly removed from campus housing and placed in a "moldy apartment" immediately after the investigation into him began. And he contends that Jane Doe was never removed from campus housing after he instituted a formal complaint against her. However, the decision to remove John from campus housing certainly could have been based, in part, on the fact that John had two sexual misconduct allegations pending against him at the time. In summary, John has not shown that there was a similarly-situated female student who was not investigated or disciplined for similar allegations to those alleged against him. *See Z.J. v. Vanderbilt University*, 355 F. Supp. 3d 646, 678 (E.D. Tenn. 2018). Thus, he has not shown a likelihood of success on the merits of a selective enforcement claim under Title IX.

### b.   Failure to Comply with University Policies Under Title IX

John Doe also claims that Transylvania failed to comply with the University's Misconduct Policy in violation of Title IX. *See* Transylvania University Sexual

- 15 -

Misconduct Policy, http://www.transy.edu/sites/default/files/pictures/Sexual-Misconduct Policy_1920.pdf (last visited April 10, 2020). He asserts that there were multiple policy rights to which he was not afforded and that he is "contractually entitled to the benefit of the University misconduct policy."

It remains unclear exactly how John wishes to frame this claim since he labels it as a Title IX claim but asserts that he is contractually obligated to the benefit of the misconduct policy. Additionally, during the April 9 hearing before this Court and in his reply brief, John asserted that the policy and procedures handbook provides him a constitutional right to due process and the proposed federal regulations guarantee him a right to due process. Despite his limited ability to identify the precise nature of this claim during the hearing regarding his claim for injunctive relief, the plaintiff describes his claims as "relatively straightforward" in his reply brief. However, it still appears that he has not fully determined whether his second claim arises as a due process claim or a claim for breach of the University policies and procedures.

Typically, a plaintiff needs to assert that the constitutional violation was "committed by a person acting under state law," to allege a violation of a constitutional right. *Toth v. City of Toledo*, 480 F. App'x 827, 831 (6th Cir. 2012). However, a private actor can "be held to constitutional standards when its actions so approximate state action that they may be fairly attributed to the state." *Huang v. Presbyterian Church (U.S.A.)*, 346 F. Supp. 979, n. 20 (E.D. Ky. 2018) (citing *Lansing v. City of Memphis*, 202 F.3d 821, 828 (6th Cir. 2000)). This Court has previously found that a private university is not a state actor and a claim under the Fourteenth Amendment did not apply. *Raithatha v. Univ. of Pikeville*, No.

7:16-CV-251-EBA, 2017 U.S. Dist. LEXIS 169366, at *8 (E.D. Ky. Oct. 13, 2017). The Court noted that, standing alone, receiving federal funding is insufficient to convert a private university into a state actor. *Id*. at *24 (citing *Spark v. Catholic Univ. of America*, 510 F.2d 1277 (D.C. Cir. 1975)). Here, the plaintiff did not argue that the actions of the private university amounted to state action, but he briefly mentioned that the University receives federal funding which exposes it to suits under Title IX. But John Doe has failed to show how the University's actions rise to the level of state action.

Instead, John Doe argues that the policies provided for in the Sexual Misconduct Handbook give rise to a constitutional right to due process. However, "[p]roperty interests are not created by the Constitution, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law. . . ." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 539 (1985) (internal citations and quotations omitted). And "a deprivation of a protected property interest [under the Fourteenth Amendment] occurs only when a 'right or status previously recognized by state law is extinguished.'" *Jackson v. Heh*, No. 98-4420, 2000 U.S. App. LEXIS 14075, at *13 (6th Cir. June 2, 2000) (quoting *Paul v. Davis*, 424 U.S 693, 711 (1976)). While a contract with a state entity might give rise to a property right protected under the Due Process Clause, not every contract will create such an interest. *See Brenner v. LM Gen. Ins. Co.*, No. 5:16-cv-1117, 2017 U.S. Dist. LEXIS 103569, at *12 (N.D. Ohio July 5, 2017). In summary, John Doe has failed to demonstrate how the sexual misconduct policy developed by a private university creates a property interest that stems from state law.

- 17 -

John Doe also alleges that *proposed* federal regulations give rise to a potential claim that his due process right may be violated if the April 15 disciplinary hearing goes forward, but he has not provided any authority supporting this proposition.  For an interest to be created it must stem from an *existing* rule.  And even if there was a constitutionally protected created property interest, the plaintiff cannot and has not shown that a state actor deprived him of the alleged interest. Accordingly, the plaintiff has failed to show a likelihood of success on the merits of a due process claim.

The plaintiff cites to *Doe v. Trustees of the University of Pennsylvania*, 270 F. Supp. 3d 799 (E.D. Pa. 2017), in support of his assertion that a university is bound by its own policies and to provide "fundamental fairness."  But the plaintiff in *Trustees of University of Pennsylvania* was pursuing a claim for breach of contract.  The plaintiff asserted that the defendant breached the Code of Student Conduct and the Student Disciplinary Procedures. Among other things he argued that the school breached the provision providing for "fairness."  *Id*. at 811.  The Eastern District of Pennsylvania indicated the term "fairness" in the contract must be read in conjunction with "the more specific provisions in the Disciplinary Procedures, which described proceedings designed to be 'fair.'"  *Id*. at 812. The court concluded that the plaintiff could not state a claim for breach of contract without identifying some specific provision in the Disciplinary Procedures allegedly breached.  *Id*. at 815.

It seems that John Doe is arguing that Transylvania breached its own policies and, therefore, he is entitled to relief under a breach of contract theory.   "A student may raise breach of contract claims arising from a university's alleged failure to comply with its rules

governing disciplinary proceedings." *Anderson v. Vanderbilt Univ.*, 450 F. App'x 500, 502 (6th Cir. 2011).  "Contracts for private education have unique qualities and must be construed to allow the institution's governing body to meet its educational and doctrinal responsibilities." *Valente v. Univ. of Dayton*, 438 F. App'x 381, 384 (6th Cir. 2011).  "In confronting challenges to private school disciplinary proceedings, the appropriate question is [] whether the proceedings fell within the range of reasonable expectations of one reading the relevant rules, an objective reasonableness standard." *Faparusi v. Case W. Reserve Univ.,* 711 F. App'x 269, 277 (6th Cir. 2017) (internal citations and quotations omitted). The Court compares alleged incidents of unfair conduct by a university in a disciplinary proceeding against the governing handbook.  *Doe v. Univ. of Dayton*, 766 F. App'x 275, 285 (6th Cir. 2019).

Here, John Doe argues that his right to cross-examination is being impeded because: (i) he did not receive the evidence/materials as required by the policy; (ii) he did not receive an advisor of his choice; (iii) the University is violating his right to a "live" hearing by requiring a videoconference; and (iv) individuals conducting the investigation are untrained.  And he asserts that the procedures are biased against males.  But he has failed to show how the University breached his rights created under the Sexual Misconduct Policy.

First, regarding the argument that Transylvania is violating Doe's opportunity for a "live" hearing by the use of video conferencing, the Sexual Misconduct Policy states that "[a]ll hearings will be live and recorded by a transcriber."  But nowhere in the policy is "live" defined as requiring everyone involved to be physically present in the same room.

And contrary to the plaintiff's assertion, a hearing can be "live" even when conducted over video conferencing.[2]  It is puzzling and wrong to suggest that real-time videoconferencing converts an administrative proceeding into something that is not "live".

Next, the Sixth Circuit has approved (albeit in dicta) the use of video conferencing for disciplinary hearings, noting that "[i]ndisputably demeanor can be assessed by the trier of fact without physical presence, especially when facilitated by modern technology." *University of Cincinnati*, 872 F.3d at 406.   John Doe argues that conducting cross-examination over video conference would not be as effective, but as the Sixth Circuit notes the trier of fact can assess demeanor and make credibility determinations without physical presence.   Here, the parties will be able to participate on the same videoconference, question witnesses before the fact-finder, and conduct cross-examination in real-time.   *See Baum*, 903 F.3d at 583.   This will allow the panel to make credibility assessments and render a fair decision in this "he-said, she-said" administrative proceeding.

As noted above, the Court's concerns with the use of Zoom as a video platform has been adequately addressed by the University by the intended use of another platform to conduct the hearing.[3]   Accordingly, the Court concludes that the use of Google Meet and

---

[2]   At present, another judge of this Court is completing a multi-week criminal trial involving witnesses unable to travel who are testifying via video conferencing from California.  It would be wrong to assert that the trial is not "live" by virtue of the use of this necessary use of technology.

[3] *See, e.g.*, Shannon Vavra, *FBI warns Zoom, teleconference meetings vulnerable to hijacking*, https://www.cyberscoop.com/zoom-fbi-teleconference-hijacking/ (last visited April 10, 2020).  Zoom does not provide end-to-end encryption and hackers have been accessing an average of 100 meetings per hour. *See 'War Dialing' Tool Exposes Zoom's*

the virtual hearing protocol provided in the University's supplemental memorandum satisfies security and privacy concerns of the parties and witnesses.

The Court also concludes, based on all information provided by the parties, that John Doe has been given access to evidence and materials from the investigation, as required by the policy.  This has been provided in a Google Drive folder.  Further, Doe's counsel has not followed-up with the University regarding any claims that he does not have access to any needed information or materials.[4]

The policy also provides that both parties are entitled to "have an advisor present throughout the process; however, advisors may not directly participate in the hearing." John Doe was notified of his right to have an advisor during the process; he declined and retained counsel. While the policy does provide that the advisor should be a silent participant, the University indicated during the April 9 hearing before this Court that his advisor (attorney) may cross-examine witnesses if he or she is licensed to practice law in Kentucky.   Doe's complaint regarding cross-examination has been rendered moot based on Transylvania's willingness to allow his attorney to conduct examination of witnesses.

Doe also argues that his right to cross-examine witnesses will be violated by allowing the hearing to be conducted via video conference.  The Sixth Circuit has held that

---

*Password Problems,* https://krebsonsecurity.com/2020/04/war-dialing-tool-exposes-zooms-password-problems/ (last visited April 10, 2020).

[4] The policy requires that parties have "access to information and evidence directly related to them within a reasonable time before a hearing under this policy."  Morgan noted when providing the Google Drive link to the plaintiff that he could extend the time he had to access the drive.  [Record No. 14-18]

if a public university had to choose between competing narratives in resolving a disciplinary action, the university must give the accused student or his agent the opportunity to cross-examine the accuser in a live hearing. *University of Cincinnati*, 872 F.3d 393; *Baum*, 903 F.3d at 582-84. *But see Doe v. Belmont Univ.*, 334 F. Supp. 877, 894 (M.D. Tenn. 2018) (declining to allow the accused to receive the right to cross-examine in a case of competing narratives at a private university); *Z.J. v. Vanderbilt*, 355 F. Supp. 3d at 698.

In the *University of Cincinnati* case, the court weighed the right to cross-examine the complainant to aid the truth-seeking process and reduce the likelihood of erroneous deprivation against the risk of unnecessarily formalizing disciplinary procedures and burdening school administrators. 872 F.3d at 400; *see also Baum*, 903 F.3d at 582. The Sixth Circuit concluded that allowing for cross-examination conducted through the hearing panel would aid the truth-seeking process. *University of Cincinnati*, 872 F.3d at 404. Further, it noted that the university's obligations were narrow; it needed to provide a means for the panel to evaluate credibility, but it did not need to provide for the accused to physically confront his accuser. *Id*. at 406. In *Baum*, the Sixth Circuit reinforced the finding that the university must allow some form of live questioning in front of the factfinder while also noting that the questioning could occur over Skype or some other form of modern technology. *Baum*, 903 F.3d at 583.

The defendant has explained that there are three avenues for cross-examination the parties would be allowed to use during the hearing, in light of the proposed changes to the Department of Education guidance: (1) questions for cross-examination may be submitted

in advance to the hearing panel; (2) during the hearing, questions may be submitted to the hearing panel; and (3) questioning may be posed by the plaintiff's advisor if the advisor is authorized and licensed to practice law in Kentucky.   Transylvania attempted to convey this information to the plaintiff via e-mail and it was prepared to have further discussions with Doe's counsel at the time of the pre-hearing conference, although Doe's counsel seems inclined to avoid those discussions.   Notwithstanding counsel's reluctance to resolve his concerns, the Sixth Circuit has approved similar procedures as meeting the minimum requirements for due process.  *See University of Cincinnati*, 872 F.3d at 404.   And this Court agrees that the University's planned procedures are acceptable under the circumstances presented here.

Finally, John Doe seeks to delay final administrative resolution of the claims made against him by claiming that the investigators involved in his case and that the panel chosen to hear the evidence on April 15 are untrained.   However, he admitted through counsel during the April 9 hearing before this Court that he does not have *any* evidence that the individuals involved were not trained in their respective areas.   Regarding this issue, the University's policy provides that an investigation will be assigned to a trained investigator. The policy also notes that "[a]ll hearing board members are required to receive annual training on all issues related to domestic violence, dating violence, sexual assault, stalking, and exploitation, and how to conduct a hearing process that protects the safety of the complainants and promotes accountability. Additionally, hearing board members receive a review training session within one week of hearing a case."

- 23 -

The Title IX Coordinator explained in an e-mail to counsel that "[t]he pool [of hearing board members] is provided training using a variety of resources from locally and nationally accredited organizations such as ATIXA.  The ATIXA materials are available on the company's website."  [Record No. 5-2] Further, she noted that two pool members had additional training to act as the chair/hearing officers.  [Record No. 5-2]  In short, the plaintiff has failed to produce any evidence demonstrating that any investigator erred in his/her assigned duties by virtue of being untrained regarding some issue the plaintiff has not identified or that any panel member will err in hearing the evidence or reaching a proper determination due to a similar unidentified training failure.  Counsel's speculation is a poor substitute for necessary evidence of inadequate training.

Again, in summary, John Doe received notice of the charges against him.  Likewise, he has been given the opportunity for multiple pre-hearing conferences.  He has been advised of the evidence against him.  He will have the opportunity to call witnesses, present evidence, cross-examine witnesses, and make opening and closing statements during a proceeding which allows the panel to judge credibility of witnesses while also providing for privacy and security of the information presented.  The University intends to commence the student disciplinary hearing before an impartial panel on Wednesday, April 15, 2020, and Doe has not shown a valid reason to delay the matter any further.

### c.    Emotional Distress

Doe asserts in the complaint's third count for relief that he has suffered severe emotional distress as a result of the University's actions.  He does not specify, however, whether he is asserting intentional or negligent infliction of emotional distress.

- 24 -

"Under Kentucky law, a plaintiff claiming *intentional* infliction of emotional distress must allege facts that establish: (1) the wrongdoer's conduct was intentional or reckless; (2) the conduct was outrageous and intolerable such that it offends generally accepted standards of decency and morality; (3) there was a causal connection between the wrongdoer's conduct and the emotional distress; and (4) the emotional distress was severe." *Hall v. City of Williamsburg*, No. 6:15-304-DCR, 2017 U.S. Dist. LEXIS 79603, at *43-44 (E.D. Ky. May 24, 2017) (citing *Gilbert v. Barkes*, 987 S.W.2d 772, 777 (Ky. 1999)).   For a claim of *negligent* infliction of emotional distress, the plaintiff must show "(1) the defendant owed a duty of care to the plaintiff, (2) breach of that duty, (3) injury to the plaintiff, and (4) legal causation between the defendant's breach and the plaintiff's injury." *Osborne v. Keeney*, 399 S.W.3d 1, 17 (Ky. 2012).

In a similar scenario to Doe's, under Tennessee state law, the Middle District of Tennessee explained that "removal from academic programs and frustration of earning academic degrees, even if humiliating, depressing, or distressful, are not sufficiently egregious to support a claim of IIED." *Belmont Univ.*, 334 F. Supp. 3d at 903.   Similar to Tennessee law, Kentucky requires outrageous conduct that is "a deviation from all reasonable bounds of decency and is utterly intolerable in a civilized community" for an IIED claim.   *Sacharnoski v. Capital Consol., Inc.*, 187 F. Supp. 2d 843, 845 (W.D. Ky. 2002) (quoting *Craft v. Rice*, 671 S.W.2d 247, 249 (Ky. 1984)).   Further, in *Univ. of Dayton*, the Sixth Circuit found that even if there were flawed Title IX procedures during a disciplinary proceeding, they did not exceed the bounds of decency to sufficiently state a claim for IIED.   766 F. App'x at 291.   The filing of a Title IX complaint does not rise to

- 25 -

the level of outrageous conduct necessary for an IIED claim.  *Id*.  And here, the conduct alleged in Doe's complaint does not rise to the level of outrageous conduct that exceeds the bounds of decency.  Accordingly, while his claim for intentional infliction of emotional distress would likely fail on the merits, it certainly does not support a claim for injunctive relief based on the information provided by the parties to date.  Additionally, there is no allegation or evidence of a duty and breach of that duty causing Doe's emotional distress.  Thus, a claim of negligent infliction of emotional distress would likely also fail on the merits and would not support a claim for injunctive relief.

Because the plaintiff has failed to show a likelihood of success on the merits of any of his claims, this factor weighs against granting an injunction.

### ii.  John Doe Will Not Suffer Irreparable Injury If the April 15, 2020, Student Disciplinary Hearing Proceeds As Scheduled.

The Court next considers whether "irreparable injury is likely in the absence of an injunction."  *Winter v. Natural Res. Def. Council, Inc*., 555 U.S. 7, 8 (2008).  An injury is irreparable if it is not fully compensable by monetary damages.  *Overstreet*, 305 F.3d at 578.

While a plaintiff is entitled to presumption of irreparable harm if he or she demonstrates a likelihood of success on his constitutional claims, Doe has failed to identify a constitutional claim that has been violated (due process or otherwise).  *See Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998).  The Court notes, however, that any adverse disciplinary action could impact future education and career possibilities.  *Marshall v. Ohio Univ*., No. 2:15-cv-775, 2015 U.S. Dist. LEXIS 31272, at *24-25 (S.D.

Ohio Mar. 13, 2015).  But as the Southern District of Ohio noted in a similar circumstance, "the harm identified is speculative as the [hearing panel] has made no findings on Doe's case."  *Roe v. Dir., Miami Univ.,* No. 1:19-cv-136, 2019 U.S. Dist. LEXIS 55246, at *22 (S.D. Ohio Apr. 1, 2019).  Further, in *Roe*, the court noted that while the "plaintiff's suspension may constitute irreparable harm, that is when the suspension occurred *after* an unfair hearing."  *Id*. (citing *Univ. of Cincinnati*, 872 F.3d at 407).

The undersigned concludes that John Doe has not demonstrated that he is likely to suffer irreparable injury if the hearing proceeds as scheduled.

### iii.     Issuing Injunctive Relief Would Likely Cause Harm To Others.

In assessing the harm to others, the Court balances the alleged harm to the plaintiff, the potential harm to the defendant as well as the impact of the decision on relevant third parties.  *See Merck Sharp & Dohme Corp. v. Conway*, 861 F. Supp. 2d 802, 817 (E.D. Ky. 2012).  Here, John Doe argues that no third parties will be harmed by the issuance of a temporary restraining order or preliminary injunction because no one is on campus at the present time.  [Record No. 5-1] However, the interests of other parties to the hearing would be substantially harmed by the issuance of injunctive relief.  Jane Doe has an interest in the prompt resolution of her Title IX claim, and indefinitely postponing her hearing would leave her to languish without such a resolution.

Transylvania also has a substantial interest in the fair, prompt, and accurate resolutions of disciplinary matters without undue interference from courts.  Additionally, the University clearly "has a strong interest in maintaining a campus free of sexual harassment and sexual assault."  *Roe*, 2019 U.S. Dist. LEXIS 55246, at *20.  As the

defendant points out, an indefinite postponement of the student disciplinary hearing until the present COVID-19 pandemic ends could likely result in separate litigation based on claims of deliberate indifference to accusations of misconduct.

This favor also weighs against granting the plaintiff's motion because other parties would likely suffer substantial harm if injunctive relief were granted.

### iv.     Injunctive Relief Is Not In The Public's Interest.

The Court also considers the public interest when deciding whether to grant injunctive relief.  Here, there is a public interest in the timely enforcement of Title IX requirements as well as access to fair disciplinary proceedings for all parties.  *Univ. of Cincinnati*, 872 F.3d at 407.  Indeed, the public also has an interest in universities' enforcement of their disciplinary procedures.  *Roe v. Dir., Miami Univ.*, 2019 U.S. Dist. LEXIS 55246, at *25. Like the three preceding factors for consideration, this factor also weighs against the issuance of injunctive relief.

### III.

Doe has also filed a motion to expedite discovery.  [Record No. 6] However, Transylvania argues that this is an attempt to convert the administrative proceeding into federal litigation so the plaintiff can then leverage and use civil discovery in the administrative hearing.  In this regard, the Court notes that "the Title IX adjudication process is not a civil lawsuit between the alleged victim and the respondent.  Rather, it is a mechanism for universities to keep their campuses safe by responding to actions in violation of University sexual misconduct policies." *Doe v. University of Kentucky*, 361 F. Supp. 3d 687, 699 (E.D. Ky. 2019).  The undersigned agrees and is not inclined to allow

the broad use of civil discovery in federal litigation for John Doe's administrative proceeding before the University.  His motion to expedite discovery will be denied.

## IV.

In conclusion, all relevant factors weigh against granting injunctive relief. Likewise, the Court declines to convert the school disciplinary proceeding into federal litigation by allowing expedited discovery.  Accordingly, it is hereby

**ORDERED** as follows:

1.      Plaintiff John Doe's emergency motion for a temporary restraining order and/or temporary injunction [Record No. 5] is **DENIED**.

2.      Plaintiff John Doe's motion to expedite discovery [Record No. 6] is **DENIED**.

Dated:  April 13, 2020.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky